UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M. A. S. H. a minor by her mother MONICA C. BEASLEY, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN Commissioner of S.S.A., <br><br> Defendant. | No. 1:14-cv-01995-SEB-MJD |

**REPORT AND RECOMMENDATION**

Claimant M.A.S.H., a minor, by her mother Monica C. Beasley, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("the Act"). See 42 U.S.C. § 1382. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

### I. Background

M.A.S.H. filed her application for SSI on September 29, 2011, alleging an onset of disability of March 1, 2010 due to various mental impairments, including ADHD and behavior problems.[1] [R. at 182.] M.A.S.H.'s application was denied initially on February 22, 2012 and

---

[1] M.A.S.H. recited the relevant factual and medical background in her opening brief. [See Dkt. 15.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [See Dkt. 17.] Because these facts involve M.A.S.H.s confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

denied on reconsideration on May 9, 2012. M.A.S.H. timely requested a hearing, which was held before Administrative Law Judge Mark C. Ziercher ("ALJ") on April 19, 2013. The ALJ's July 26, 2013 decision also denied M.A.S.H.'s application for SSI, and on October 3, 2014 the Appeals Council denied M.A.S.H.'s request for review, making the ALJ's decision the final decision for the purposes of judicial review. M.A.S.H. timely filed her Complaint with this Court on December 3, 2014, and the matter is now before the Court.

## II. Legal Standard

For an individual under the age of eighteen to be eligible for SSI, a claimant must have a "disability," as defined by 20 C.F.R. § 416.924. [2] The Act defines disability of a child as a "physical or mental impairment, which results in marked and severe functional limitations, and . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis: (1) if the claimant is engaged in work that qualifies as substantial gainful activity, she is not disabled regardless of her medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable, severe impairment or combination of impairments, she is not disabled; and (3) if the claimant does not have an impairment that meets, medially equals, or functionally equals a Listing or does not meet the twelve-month durational requirement, she is not disabled. 20 C.F.R. § 416.924(a), (b). *See also Murphy v. Astrue*, 496 F.3d 630 (7th Cir.2007); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483 (7th Cir. 2007).

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found in cited court decisions.

In considering whether a child's impairment functionally equals a Listing, the ALJ determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others, (4) Moving about and manipulating objects, (5) Caring for yourself, and (6) Health and physical well-being. 20 C.F.R. 416.926a(b), (d). In determining whether such limitations exist, the ALJ must consider the functional limitations of all medically determinable impairments, regardless of the severity of the impairment being taken into account. 20 C.F.R. 416.926a(a).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ followed the three-step child disability determination analysis and initially found that (1) M.A.S.H. has not engaged in substantial gainful activity since the date of application, and (2) M.A.S.H.'s "attention deficit-hyperactive disorder (ADHD), disruptive behavior disorder and adjustment disorder" are "severe impairments," as the medical and nonmedical evidence shows that the impairments have a more than minimal effect on the claimant's functioning. [R. at 14.] At Step Three, to determine whether M.A.S.H.'s impairments meet or medically equal a listed impairment, the ALJ considered the evidence under Listing 112.04 (Mood Disorders) and Listing 112.11 (ADHD), concluding that, because the medical record does not support a finding of a "marked" or "extreme" limitation in any of the child functional domains required by Paragraph B of both Listings, M.A.S.H.'s impairments cannot meet Listings 112.04 or 112.11. [R. at 14-15.]

The ALJ then considered "all of the relevant evidence in the case record" to determine whether M.A.S.H.'s combination of impairments functionally equals one of the Listings. [R. at 15.] Although the ALJ first made a finding that M.A.S.H.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms and limitations, the ALJ concluded that the alleged location, duration, frequency, and intensity of her symptoms and the alleged limitations to her activities of daily living were not supported by medically acceptable clinical and diagnostic techniques or by the records of the treating or examining healthcare professionals. [R. at 16.] Additionally, the ALJ indicated that there is insufficient objective medical evidence regarding the extent of M.A.S.H.'s alleged symptoms and impairments when she follows her medication regimen. [*Id.*]

Significantly, the ALJ relied on a February 21, 2011 evaluation that examined M.A.S.H.'s eligibility for the special education program, at the end of which evaluation the school psychologist summarized that "[s]ince [M.A.S.H.] started taking medication, her behavior has improved, and she is no longer demonstrating any significant emotional or behavioral problems in the school setting," additionally noting that an assessment suggesting a delayed range of adaptive functioning was completed before M.A.S.H. began taking medication and concluding that special education was not necessary. [R. at 17.] After this evaluation was completed, the ALJ noted that there were reports of a reasonably stable condition despite inconsistent use of medication throughout 2011, a six month gap in treatment records and slight regression in 2012, and teacher questionnaires from 2013 reflecting improved behavior when on medication. [R. at 18-19.] The ALJ additionally observed that, although her daughter was prescribed Adderall for her impairments, Ms. Beasley testified that she often would not administer the medication at home and declined to increase the dosage as recommended, relying on the school to administer M.A.S.H.'s lower dosage of Adderall, which was then administered only Monday through Friday. [R. at 19.]

When discussing the weight to be given to each source of evidence, the ALJ first addressed the testimony of Ms. Beasley and found her statements to be partially credible based, in part, on her bias of relation to M.A.S.H. and the fact that her allegations regarding the frequency of school suspensions were not supported by the record. [R. at 20.] In contrast, the ALJ found the statements of M.A.S.H.'s teachers to be generally credible and unbiased and also gave significant weight to the reports or the State Agency medical consultants. [*Id.*] However, the ALJ wrote that the medical evidence "contains no medical source statements by a treating health professional," finding that M.A.S.H.'s counselor, Ms. Price, "is not eligible to make a

5

medical source statement" because the terms "marked" and "extreme," which are terms of art under the social security regulations, were not defined on the form she completed and her conclusions were inconsistent with the reports of M.A.S.H.'s teachers, a consultative examiner, Dr. Martin, and Dr. Coats. [*Id.*]

Having made his credibility determinations, the ALJ then addressed each of the six domains used to measure a minor child's functionality. First, the ALJ determined that M.A.S.H. has a less than marked limitation in acquiring and using information, in spite of the fact that the State Agency medical consultants determined that no limitation exists, acknowledging that M.A.S.H.'s behavioral issues may at times interfere with her ability to acquire and use information. [R. at 21.] The ALJ then found that M.A.S.H. has a less than marked limitation in attending and completing tasks, as there is some evidence that M.A.S.H. is defiant with turning in homework assignments, though her ability to complete the work "appears unquestioned." [R. at 22.] Third, the ALJ concluded that M.A.S.H. has a less than marked limitation in interacting and relating with others based on her teacher's questionnaires, the State Agency medical consultants' reports, and the evidence that M.A.S.H. is able to interact well with others even when her medication is not properly administered. [R. at 23.]

With regard to moving about and manipulating objects, the ALJ found that M.A.S.H. has no limitation, as neither M.A.S.H. nor her mother has alleged, nor does the record reflect, any such limitations. [R. at 23-24.] For the same reasons, the ALJ determined that M.A.S.H. has no limitation in caring for herself. [R. at 24-25.] Finally, the ALJ concluded that M.A.S.H. has a less than marked limitation in health and physical well-being due to the fact that M.A.S.H. has a mild asthma condition that requires ongoing use of albuterol. [R. at 25-26.] Having made these findings, the ALJ concluded that M.A.S.H. does not have two markedly limited functional

domains or one extremely limited functional domain. [*Id.*] Accordingly, the ALJ concluded that M.A.S.H. is not disabled, as defined by the Act. [*Id.*]

### IV. Discussion

On appeal, M.A.S.H. argues that the ALJ committed two reversible errors in finding that she is not disabled. [Dkt. 15.] First, M.A.S.H. asserts that the ALJ erred in Step Three by failing to discuss whether M.A.S.H.'s impairments meet or medically equal Listing 112.08 (Personality Disorders) after finding at Step Two that her Disruptive Behavior Disorder is a "severe limitation." [*Id.* at 18-21.] Second, M.A.S.H. asserts that the ALJ erroneously rejected the assessment of M.A.S.H.'s counselor, which, if given deference, would have led to a finding of disability. [*Id.* at 19-25.]

In step three, the failure to mention a key listed impairment, when coupled with insufficient analysis of the evidence, can constitute reversible error. *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006) (ordering remand where the ALJ failed to mention Listing 1.04A because the ALJ additionally failed to evaluate any evidence that could potentially support the claimant's disability claim); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (observing that, in two circuits, an omission of a key Listing coupled with perfunctory step three analysis requires remand).

When it comes to childhood mental impairments, however, Listings 112.02, 112.03, 112.04, 112.06, 112.07, 112.08, 112.09, 112.10, and 112.11 all require that, in addition to meeting certain diagnosis-specific requirements contained in their own Paragraph A, the claimant must additionally satisfy general requirements contained in an identical Paragraph B. 20 C.F.R. pt. 404, subpt. P, App. 1, 112.00 *et seq.* Accordingly, courts have held that, where the ALJ fails to address the Listing for a relevant mental disorder but sufficiently evaluates the

claimant's record under another substantially similar mental disorder and determines that the Paragraph B[3] requirements are not met, any error in the ALJ's failure to mention the relevant Listing is harmless. *See Patterson v. Colvin*, No. 1:14-CV-00468-SEB, 2015 WL 898186, at *9 (S.D. Ind. Mar. 2, 2015) ("the Court could remand the case for a specific consideration of Listing 12.03, but the ALJ could simply repeat the paragraph B . . . analysis he already completed and conclude that Plaintiff's impairments did not meet or medically equal Listing 12.03. The result on remand would thus be the same, and remand therefore is not required"); *Guthrie v. Astrue*, No. 10-CV-03180, 2011 WL 3041365, at *23 (N.D. Ill. July 22, 2011) ("We agree with the Commissioner, and do not find harmful error in the ALJ's failure to consider Listing 12.04, for depression, based on Guthrie's severe impairments of panic disorder and agoraphobia. We note that if Dr. Sadowski's opinions support a finding of disability as to Listing 12.06(B), the opinions would similarly support such a finding on remand as to Listing 12.04(B)"). Thus, where an ALJ fails to consider one relevant Listing but considers another with an identical Paragraph B requirement and makes a sufficient finding that the requirements for Paragraphs B are not met, the error is harmless and remand is not warranted.

      Here, it is plausible that the fact that the ALJ found M.A.S.H.'s Disruptive Behavior Disorder to be a severe impairment in step two and then failed to consider the record under Listing 112.08 (Personality Disorders) at step three constitutes error. [R. at 14-15.] However, the ALJ did consider M.A.S.H.'s medical record under Listings 112.04 and 112.11, which contain the same Paragraph B requirements contained in Listing 112.08. [*Id.* (citing to C.F.R. pt.

---

[3] The Childhood Listings, found in Part B of Appendix 1, vary slightly from the Adult Listings, found in Part A of Appendix 1, in that the Childhood Listings do not have alternate Paragraph C criteria that can substitute for satisfaction of the Paragraph B criteria. *See* 20 C.F.R. pt. 404, subpt. P, App. 1. Accordingly, while applicable case law and reasoning may refer to Paragraphs B and C, the lack of Paragraph C in the Childhood Listings make the case law no less applicable.

404, subpt. P, App. 1.] In evaluating whether M.A.S.H.'s mental impairments meet or medically equal such Listings, the ALJ found that the Paragraph B requirements were not met after evaluating M.A.S.H.'s limitations in the child functional domains. [R. at 15.] Accordingly, although the ALJ failed to mention a potentially relevant listing, the ALJ considered the same Paragraph B requirements that he would have considered under Listing 112.08 when discussing Listings 112.04 and 112.11. Accordingly, as seen in *Patterson* and *Guthrie*, any error was harmless and remand on this issue is not proper.

 M.A.S.H.'s next argument asserts that the ALJ improperly rejected the functional findings of her counselor's April 18, 2013 assessment. [Dkt. 15.] Specifically, M.A.S.H. refers to her counselor's conclusion that M.A.S.H. has an extreme limitation with regard to Attending and Completing Tasks and marked limitations in Interacting and Relating to Others and in Moving About and Manipulating Objects. [R. at 410.] In this report, her counselor noted that M.A.S.H. has been in her services for two years and "had been making significant progress until she was removed from her mother's home." [R. at 409.]

 It is true that when a child has marked limitations in two functional domains, or an extreme limitation in one functional domain, the SSA will determine that the child's impairments functionally equal a Listing. 20 C.F.R. § 416.926a(d). A finding of marked limitation is appropriate where the child's impairments "interfere seriously" with her ability to independently initiate, sustain, or complete activities, which interference can be measured as being at least two, but less than three, standard deviations below the mean. *Id.* at § 416.926a(e)(2)(i). A finding of extreme limitation is appropriate where the child's impairments "interfere very seriously" with her ability to independently initiate, sustain, or complete activities, which interference can be measured as being at least three standard deviations below the mean. *Id.* at § 416.926a(e)(3)(i).

9

Pursuant to the Act, only an "acceptable medical source," such as a licensed physician or a certified psychologist, can give a medical opinion or can be considered a treating source. *Id.* at § 416.913(a). While a certified individual who performs the same function as a school psychologist in a school setting can sometimes give a medical opinion, such opinion can only be used for the purposes of establishing the existence of an impairment. *Id.* The opinion of a school counselor or therapist, while not considered a "medical opinion," may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." S.S.R. 06-03p.

When determining what weight should be given to any opinion of record, the ALJ may take into account the degree to which medical signs and laboratory findings support the opinion, the opinion's consistency with the record as a whole, whether the opinion is from an "acceptable medical source," and any other factors that tend to support or contradict the opinion, such as "the amount of understanding of [the SSA's] disability programs and their evidentiary requirements." *Id.* While the ALJ must consider all of the evidence and may not cherry-pick the evidence that supports a finding of non-disability, the ALJ need not discuss each piece of evidence of record. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Additionally, the determination of the degree of weight given to particular sources of evidence is within the discretion of the ALJ, and so long as he minimally articulates his analysis of the evidence the reviewing court will not overturn his decision. *Diaz v. Chater*, 55 F.3d 300, 309 (7th Cir. 1995).

Here, the ALJ articulated his credibility determination with regard to Ms. Price's April 18, 2013 evaluation as follows:

> Ms. Price is not eligible to make a medical source statement. The medical evidence does show contact with the claimant in her professional capacity. She is also an observer who has no personal interest in the outcome of the claim and she is generally credible. However, in opining with respect to the claimant's

10

> limitations, the terms "marked" and "extreme" are not defined on the form. Because these terms are defined by regulation, they are terms of art. There is nothing in the record that shows Ms. Price is familiar with the Social Security disability process and the undersigned declines to assume that the used the terms in a manner consistent with the Regulations. Moreover, the undersigned notes Ms. Price's opinion is not consistent with those who are more qualified, such as the claimant's teachers, consultative examiner, Dr. Martin, Ph.D., and her own supervisor Dr. Coats, none of whom certainly characterize any domain as having extreme limitations.

[R. at 20 (internal quotations omitted).] The ALJ's articulation in the excerpt above is substantial and clear, more than meeting the minimal articulation standard set forth in *Diaz*. Additionally, the factors that the ALJ employed to reach his conclusion include Ms. Price's status as a non-medical source and the evaluation's inconsistency with other evidence in the record, each of which is a factor contemplated by the regulations and properly considered pursuant to Rule 06-03p.

Thus, the ALJ did not "erroneously reject the treating-examining physicans' [sic] functional findings," as asserted by M.A.S.H. [Dkt. 15 at 21.] Instead, the ALJ considered the opinion of Ms. Price, weighed it pursuant to the requirements of the Act, determined that the opinions of Dr. Martin, Dr. Coats, and M.A.S.H.'s teachers should be given greater weight than Ms. Price's conflicting opinion, and sufficiently articulated his reasons for so weighing her opinion. Such an evaluation meets the requirements recounted by the Seventh Circuit in *Diaz*, so the Court will accordingly give deference to the ALJ's determination to give less weight to Ms. Price's evaluation. Therefore, the decision of the ALJ need not be reversed based on his treatment of Ms. Price's April 18, 2013 evaluation.

## V. Conclusion

For the aforementioned reasons, the Court should **AFFIRM** the decision of the Commissioner denying M.A.S.H.'s application for Supplemental Security Income (SSI) under

Title XVI of the Social Security Act.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  08/28/2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov